704 N.W.2d 454 (2005)
In the Interest of D.G. and L.G., Minor Children,
K.G., Father, Appellant,
S.G., Mother, Appellant.
No. 05-0718.
Court of Appeals of Iowa.
August 17, 2005.
*456 Stephen Jackson of Jackson & Jackson, P.L.C., Cedar Rapids, for appellant-father.
Thomas O'Flaherty of O'Flaherty Law Firm, Swisher, for appellant-mother.
Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, Harold Denton, County Attorney, and Rebecca Belcher, Assistant County Attorney, for appellee-State.
Charles Nadler of Nadler & Weston, Cedar Rapids, guardian ad litem for minor children.
Considered by VOGEL, P.J., and MAHAN and ZIMMER, JJ.
VOGEL, P.J.
Kenneth is the father and Sherry the mother of Daisy, born in February of 1990, and Lindsey, born in May of 1993. In November of 2000 Sherry voluntarily placed Daisy and Lindsey in foster care as she was homeless and Kenneth was incarcerated. In December of 2000 the juvenile court adjudicated Daisy and Lindsey children in need of assistance (CINA) as to Sherry, and with respect to Kenneth, in February 2001. In February of 2002, the juvenile court conducted a permanency hearing. Based on its findings and the parties' stipulation, the court changed the permanency goal from family reunification to long-term foster family care.
Daisy and Lindsey have remained in the foster home of Sandra since their removal and are doing well in her care. With the change in permanency goals, Daisy's and Lindsey's contact with their mother and father decreased to mainly visits on holidays and birthdays, all supervised. The girls have indicated that they do not desire greater contact with their parents and have further indicated that they want the visits to remain supervised.
In the fall of 2003, Daisy began indicating she wanted her parents' parental rights to be terminated. Lindsey joined in expressing this sentiment sometime later. The girls both wish to be adopted by Sandra, and Sandra has expressed a willingness to adopt the girls. In December of 2004, the State filed a petition for termination of the parental rights of both Kenneth and Sherry. Following a hearing on the petition, the juvenile court determined circumstances had materially and substantially changed so that modification of its prior dispositional order of long-term foster care was warranted. The juvenile court then terminated both parent's parental rights pursuant to Iowa Code section 232.116(1)(f) (2003)[1]. Kenneth and Sherry *457 each filed timely notices of appeal. Kenneth also filed a timely petition on appeal, while Sherry filed only a joinder.

I. Scope of Review.
We review termination orders de novo. In re R.F., 471 N.W.2d 821, 824 (Iowa 1991). Our primary concern is the best interests of the children. In re C.B., 611 N.W.2d 489, 492 (Iowa 2000).

II. Perfecting an Appeal.
Iowa Code section 232.133(1) provides: "An interested party aggrieved by an order or decree of the juvenile court may appeal from the court for review of questions of law or fact." Such appeals are then taken by complying with Iowa Rules of Appellate Procedure 6.5 and 6.6. See In re C.M., 652 N.W.2d 204, 208-209 (Iowa 2002) (describing the rules adopted by our supreme court for expediting appeals from final orders). In this case, Sherry filed a timely notice of appeal but rather than filing a petition on appeal, she filed a "joinder" in Kenneth's petition on appeal.[2]
Iowa Rule of Appellate Procedure 6.6(4) provides that in order to perfect an appeal from a juvenile court order terminating the parent-child relationship, an appellant must file with the supreme court a "petition on appeal in conformance with rule 6.151." Rule 6.6(4) then further states,
If, after the filing of a notice of appeal, no petition on appeal has been filed with the clerk of the supreme court within 15 days, the appeal is not perfected and shall be dismissed and the parties shall proceed as if no notice of appeal had been filed.
Iowa Rule of Appellate Procedure 6.151(2) requires that each petition on appeal shall include among other things, a statement of material facts, a statement of legal issues presented, and supporting legal authority. Sherry's joinder provides none of this information and she has not cited any authority that would exempt her from the requirements of the rule.
Nonetheless, we do note that rule 6.14(10) allows multiple appellants or appellees to join in one brief or to "adopt by reference any part of the brief of another." We believe this rule impliedly requires that the interests of the joining parties, as advanced on appeal, be the same, or if not, that the facts and issues applicable to each are separately stated in a joint appeal. Cf. Iowa Code § 814.3 (providing that when criminal defendants are tried jointly they may join in their appeal).
In assessing whether Sherry's interests are the same so that she may join in Kenneth's appeal, we first look for a common question of fact or law. See generally Iowa Rule of Civil Procedure 1.232 (stating, "Any number of persons. . . may join as plaintiffs in a single action, when it presents or involves any question of law or fact common to all of them."). The likelihood of such commonality largely depends *458 on whether both parents are arguing a legal position that does not depend on facts unique to either of them. For example, we could contemplate such a scenario if both parents were asserting a constitutional violation of a Code section or rule. See e.g., In re L.M., 654 N.W.2d 502, 505-506 (Iowa 2002) (determining rules reducing time for filing a notice of appeal in termination of parental rights cases, as compared to the time allowed in other types of appeals, did not violate a mother's equal protection rights); see also In re A.E., 572 N.W.2d 579, 581 (Iowa 1997) (allowing a mother to join in an Indian tribe's appeal of an order denying the tribe's motion to transfer juvenile proceedings to a tribal court pursuant to the Indian Child Welfare Act (ICWA), and further allowing the State to join in the brief of the guardian ad litem defending the order denying the tribe's motion to transfer the proceedings). We now examine the issues advanced by Kenneth in this case in order to determine whether such commonality exists.

A. Joinder on Issue I: Change of Circumstances
Kenneth first asserts that his parental rights should not have been terminated because the State failed to adequately justify the modification of the case permanency goal from long-term foster care to termination of parental rights. In support of this proposition, Kenneth does not assert any facts or law specific to himself, but instead asserts only arguments that are responsive to the juvenile court's determination that there had been a material and substantial change of circumstances. In making its findings of fact and conclusions of law on this issue, the juvenile court did not differentiate between the parents' behavior in any way but rather focused on the lives of the children and did not refer to Kenneth and Sherry individually but instead jointly as "the parents." As this determination and Kenneth's appeal involved questions of law and fact common to both parents, with specific reference to neither, we conclude Sherry's joinder perfects her appeal under our rules of appellate procedure as to this issue. We now turn to the merits of this issue.

Modification of Case Permanency Plan
Before a dispositional order in a juvenile proceeding can be modified, the party seeking modification must first prove a substantial change in material circumstances, and that under the new conditions, a change is in the best interests of the child or children. See In re C.D., 509 N.W.2d 509, 511 (Iowa Ct.App.1993). Kenneth argues that the State cannot demonstrate a material and substantial change in circumstances because the "compelling reasons" for not terminating parental rights cited by the juvenile court in its 2002 order still exist.
The juvenile court stated the following in deciding to modify the family's case permanency goal:
I agree with the parents that the strong bond continues to exist. Other circumstances, though, have changed since the court's 2002 permanency order. First, the girls have become older. They are now more mature and, particularly in Daisy's case, able to voice what they feel is best for them. Second, at the time of the permanency order, the children desired to remain in foster family care. That is no longer the case. The children understand that their foster home is not necessarily permanent. They desire a greater degree of permanency through an adoption. They would know then that Sandy would always be their mother and would provide for them. Third, both girls now express the firm desire *459 that the court terminate their parent's parental rights. Only in this way can the adoption occur. Fourth, the bond between the girls and Sandy has grown over the last three years. At this point, Daisy and Lindsey are more bonded to her, it appears, than to their parents. Sandy is clearly the true parent figure in their lives. She provides them the direction and moral guidance and love necessary for them to mature into responsible adults. I find, therefore, that the State has established a material and substantial change of circumstances necessary for me to consider the merits of the termination appeal.
Thus, just as Kenneth and Sherry now argue, the juvenile court found that a bond between the parents and their daughters continues to exist. However, the juvenile court concluded that other circumstances had changed since the February 2002 order and that this change in circumstances justified modification of the permanency plan from long-term foster care to termination of parental rights. Upon our review, we agree.
As noted by the juvenile court, at the time of the February 2002 permanency hearing both Daisy and Lindsey wanted to remain in foster family care. That is no longer the case. Now, more than three years later, both Daisy and Lindsey are old enough to express their wishes. Both have stated they do not wish to see their parents more frequently. Instead, they want to have both of their parent's parental rights terminated so that they can be adopted by Sandra. The girls seek stability in their own lives and both have developed a very strong bond with Sandra over the past three years. We agree with the juvenile court, there was a material and substantial change of circumstances, such that would warrant a change in the permanency plan from long-term foster care to termination of parental rights.

B. Joinder on Issue II: Best Interests of the Children
We next determine whether Sherry may join in the remaining part of Kenneth's petition on appeal. Kenneth's second issue asserts that termination of his parental rights was not in the best interests of the children. In support of this issue Kenneth relies, at least in part, on his testimony regarding his love for the children and his bond with the children. Kenneth also points to evidence of letters written by the children to him. Contrary to the facts presented in Kenneth's first issue, the facts asserted in his "best interests" argument are specific to Kenneth. Therefore, it is not possible for Sherry join Kenneth's appeal on this issue. This impossibility stems from the general principle that in termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally. See generally Iowa Code § 232.109 et seq. A joinder on factual or legally specific issues as to one parent's parental rights does not challenge the factual and legal reasons associated with and supporting the termination of parental rights of the "joining" parent.[3]
Additionally, in this case, the juvenile court prefaced its best interests findings by stating: "Having determined that the State has proven grounds for the termination *460 of parental rights as to each parent. . . ." (Emphasis added). Thus, the juvenile court, in its order, examined the best interests of the children only after considering the strengths and failures of each parent. Therefore, Kenneth and Sherry each needed to advance their own reasons on appeal why, considering the juvenile court's findings regarding their individual strengths and weaknesses, their separate parental rights should not be terminated. See In re D.E.D., 476 N.W.2d 737, 740 (Iowa Ct.App.1991) (affirming a juvenile court's termination of a mother's parental rights, but vacating the termination of the father's parental rights and remanding for a hearing to see if grounds for termination exist under an amended petition). That is, Sherry needed to advance her own facts and reasons, separate and apart from the reasons asserted by Kenneth, as to why she believed it was not in the children's best interests to terminate her parental rights. This is not the type of issue that would typically allow for one parent joining in another parent's petition on appeal. Therefore, as to the best interests argument, we conclude Sherry's joinder does not conform to rules 6.6(4) and 6.151 and thereby does not perfect her appeal. Consequently, we dismiss her appeal as to this issue.

Best Interests of the Children[4]
In reviewing whether termination of Kenneth's parental rights was in the best interests of the children, we note that many of the findings by the juvenile court, recited earlier in this opinion, also apply to this issue. The sheer passage of time and limited involvement of Kenneth in the lives of the girls, demonstrate a need for greater stability for Daisy and Lindsey. Moreover, as a foster and likely adoptive mother, Sandra has shown an ability to provide the girls with not only the basics of life, but also with stability, which is fundamental to the girls' emotional development and security. Sandra has also demonstrated an appreciation for and an ability to address the girls' special needs brought on by the lack of protection in their parents' care.[5] These changes in circumstances not only support a modification of the permanency goal, but also demonstrate that such a change is in the best interests of the children. See In re E.B.L., 501 N.W.2d 547, 552 (Iowa 1993) (considering the children's integration into their foster family who wished to adopt them, the foster family's ability to minister to the children's special needs, and the children's fervent desire to be adopted by their foster parents in concluding termination of parental rights was in the children's best interests); In re D.J.R., 454 N.W.2d 838, 845 (Iowa 1990) (stating that a child should not be forced to stay in "parentless limbo").

III. Summary
Iowa Rule of Appellate Procedure 6.14(10) allows multiple appellants or appellees to join in any part of the brief of another. Sherry was able to join in that part of Kenneth's petition on appeal challenging the juvenile court's finding of a material and substantial change of circumstances. We affirm the district court reasoning *461 justifying the modification of the case permanency plan to termination of the parent's parental rights.
Kenneth also asserts that termination of his parental rights is not in the best interest of the children. This issue relies on facts specific to Kenneth and therefore it is not possible for Sherry to join in this portion of Kenneth's petition on appeal. We affirm the juvenile court's conclusion that the best interests of the children support termination of Kenneth's parental rights.
AFFIRMED AS TO FATHER'S APPEAL; AFFIRMED AS TO MOTHER IN PART, DISMISSED IN PART.
NOTES
[1] Iowa Code section 232.116(1)(f) states in pertinent part:

[T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:
...
f. The court finds that all of the following have occurred:
(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
[2] Sherry's joinder states: "The mother-appellant, S.G., by counsel, Thomas J. O'Flaherty, concurs with and joins in the issues, facts, arguments, and authorities advanced in the father-appellant's Petition on Appeal, filed and served on May 19, 2005 in this case."
[3] A joinder is allowed by a party who has standing on appeal, and who simply wants to indicate an alliance of position with another party to the appeal. A guardian ad litem, for example, may voice support for the position of a party by filing a joinder on appeal. See In re N.F., 579 N.W.2d 338, 339 (Iowa Ct.App.1998) (noting that a guardian ad litem who had recommended against the termination of a mother's parental rights joined in the mother's appeal).
[4] Kenneth also asserts that the State failed to prove the grounds for termination had been demonstrated by clear and convincing evidence; however, he provides no argument or authority in support of this assertion. Therefore, we deem this issue waived. See Iowa R.App. P. 6.151(2)(d); Iowa R.App. P. 6.151(2)(e).
[5] The record indicates that both children have either been victims of or have witnessed sexual abuse. As a result of these experiences they developed certain conditions that have needed special care and attention.