# IN THE COURT OF APPEALS OF IOWA

No. 19-1094
Filed September 11, 2019

**IN THE INTEREST OF Z.R.,**
**Minor Child,**

**F.D., Mother,**
    Appellant,

**S.R., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.

A mother and father each appeal a juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Lisa K. Mazurek of Miller, Miller, Miller, P.C., Cherokee, for appellant mother.

Martha A. Sibbel of Law Office of Martha Sibbel, PLC, Carroll, for appellant father.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

T. Cody Farrens of Farrens Law Firm, Sioux City, guardian ad litem for minor child.

Considered by Potterfield, P.J., Greer, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Senior Judge**.

A mother and father separately appeal a juvenile court's order terminating their parental rights. There is clear and convincing evidence in the record to support termination of the mother's parental rights, and the court properly denied her request for an extension of time. Because the father waived all claims concerning the termination of his parental rights, we conclude his parental rights were properly terminated. We affirm on both appeals.

## I.      Background Facts & Proceedings

F.D., mother, and S.R., father, are the parents of Z.R., born in 2018. The parents have long histories of substance abuse and domestic violence. The mother's parental rights to three older children have been terminated—one just weeks before Z.R. was born.[1] Z.R. was removed from the parents' care shortly after birth and placed with a family who had adopted one of the child's half-siblings and was the adoptive placement for another one of Z.R.'s half-siblings. The Iowa Department of Human Services (DHS) has been involved with the parents and continued providing services. The child was adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2018).

After the child's removal, the parents continued using methamphetamine on a near daily basis. In September 2018, the father was arrested and jailed on drug charges. The mother entered a substance-abuse treatment program and began participating in supervised visitation. She continued her relationship with the

---

[1]  Additionally, the mother voluntarily gave up custody of a fourth child.

father. At times she reported extensive domestic violence and at other times denied any violence in her relationship with the father. The father also denied domestic violence and did not participate in offered services. The father was incarcerated during much of the CINA proceedings and had only one visit with the child.

On January 4, 2019, the State filed a petition seeking to terminate the parents' rights. The hearing was held over the course of five days: January 25, February 6, March 5 and 22, and May 13. After hearing the testimony and considering the extensive record, the juvenile court terminated the mother's parental rights under section 232.116(1)(d), (g), (h), (i), and (*l*) (2019), and the father's rights under section 232.116(1)(a), (d), (e), (g), (h), and (i). The court denied the parents' request for an extension of time, stating, "The court cannot find that [the child] will be able to be returned to either parent's care within a six-month time frame, let alone within a reasonable amount of time." The court concluded termination of the parents' rights was in the child's best interests. The mother and father have separately appealed.

## II.     Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (citation omitted). Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### III.    Mother

A.    The mother claims there is not sufficient evidence in the record to support termination of her parental rights to this child and faults the court for considering her past behavior with prior terminations.  She states this child could have been returned to her care.  She notes each of the subsections used to terminate her parental rights requires a finding the child could not be returned to her care at the time of the termination hearing or could not be returned within a reasonable period of time.  *See* Iowa Code § 232.116(1)(d), (g), (h), (i), (*l*).

The juvenile court found "by clear and convincing evidence that [the child] cannot be returned to either parent's custody today."  The court noted the mother had not progressed beyond supervised visitation.  The court concluded, "There needs to be a period of consistency in addressing all of these issues before [the mother] can even begin unsupervised visits let alone return of custody of [the child] to [the mother]."  We agree with the court's conclusions.  The mother was still attending a substance-abuse treatment program and had just started to address her mental-health problems.  Furthermore, she had not addressed the domestic violence in her relationship with the father.  We determine the child could not be safely returned to the mother's care at the time of the termination hearing.

B.    In the alternative, the mother requests an additional six months to work on reunification with the child.  *See* Iowa Code § 232.117(5) (citing Iowa Code § 232.104).  The court may continue the placement of a child for an additional six months based on a "determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  *Id.* § 232.104(2)(b).

As noted above, the juvenile court found an additional six-month time frame would not alter the continued need for removal of the child. At the termination hearing, the DHS caseworker testified:

> Q. Do you think an additional period of time would change anything in this case? A. I do not believe so because [the mother] has had four years that I've been involved in her life and the circumstance continues to circle back to the same issues.
> . . . .
> Q. Why not? A. As I said, [the mother] has never shown stability for a length of time. She has easily diverted back to past behaviors, and I don't believe that she is able to internalize what is needed to raise a child safely.

Also, a DHS report from April 30, 2019, stated:

> Everything [the mother] does is co-dependent. She thinks right now in the moment she may be vested. If given the choice to make a decision right now of her husband or her child, [she] could not pick. When [the father] gets out and his patterns [could be] the same as before. The idea in her head is having a nice big happy family when he gets out of prison. . . . The way she talks about the baby is not nurturing & comfort[ing]. . . . [She] is guarded and is rough around the edges. She is a survivor & takes care of herself. She lacks the nurturing instinct. . . . All efforts are surface level and [her therapist] thinks she goes through the motions. [Her therapist] does not see that she is sincere to change her life style. She is on a long road to recovery as she is [a] 2nd generation addict.

The mother's current progress was carefully considered by the court, but the court could not, for the safety of Z.R., turn a blind eye to the mother's years of demonstrated inability to sustain any progress for more than a short period of time. DHS has provided the mother with services for many years in relation to her older children. We agree with the juvenile court; the evidence does not show the mother would be able to meet this child's needs such that the need for removal of the child will no longer exist at the end of an additional six-month period. *See id.*

Therefore, we determine the juvenile court properly denied the mother's request for a six-month extension of the case. It would not be in the child's best interests to further delay permanency.

We affirm the juvenile court's decision terminating the mother's parental rights.

### IV. Father

The father does not raise any arguments on his own behalf, but he claims the child should be returned to the mother's care or the mother should be given an extension of time. In an appeal of a juvenile court order terminating parental rights, each parent "need[s] to advance their own reasons on appeal why, considering the juvenile court's findings regarding their individual strengths and weaknesses, their separate parental rights should not be terminated." *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005). A parent does not have standing to bring an argument on behalf of the other parent "in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights." *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007). We do not consider the father's arguments claiming the court improperly terminated the mother's parental rights.

Because the father does not raise any claims concerning the termination of his parental rights, we conclude his parental rights were properly terminated and we affirm the juvenile court.

**AFFIRMED ON BOTH APPEALS**.